**Shamis & Gentile, P.A.**
Andrew J. Shamis, Esq. (WA Bar No. 61955)
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

*Counsel for Plaintiff and Proposed Classes*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| BOBBIE SCHWARTZENBERGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AUGUSTA PRECIOUS METALS,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1. Plaintiff, Bobbie Schwartzenberger ("Plaintiff"), brings this action against Defendant, Augusta Precious Metals ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060, and the Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq.

## NATURE OF THE ACTION

2. This is a putative class action under the TCPA, 47 U.S.C. § 227 *et seq.*, and CEMA, RCW 19.190.060, and the CPA, RCW 19.86 et seq.

3. Defendant is a Wyoming corporation that provides precious metals investment products and services to consumers across the United States and the State of Washington.

4. To promote its goods and services, Defendant engages in aggressive text message campaigns to consumers with no regard for consumers' rights under the TCPA and applicable Washington state law, even after customers opt out from Defendant's messages.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. This Court also has supplemental jurisdiction over Plaintiff's Washington state law claims under 28 U.S.C. § 1367. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at

least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA and applicable Washington state law which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Eastern District of Washington and, on information and belief, Defendant has sent the same telemarketing text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in sending such text messages have occurred within this district, subjecting Defendant to jurisdiction in the Eastern District of Washington.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Spokane County, Washington.

9. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 0991 (the "0991 Number") that received Defendant's text messages.

10. Defendant is a Wyoming corporation whose principal place of business is at 5830 East 2nd Street, Casper, WY 82609.

11. Defendant directs, markets, and provides its business activities throughout the United States and the State of Washington.

12. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

13. Defendant is a "seller" as defined by 47 C.F.R. § 64.1200(f)(10).

14. Defendant is a "telemarketer" as defined by 47 C.F.R. § 64.1200(f)(12).

15. All of the text messages Defendant initiated to Plaintiff and proposed Classes were "telephone solicitations" as defined by 47 C.F.R. § 64.1200(f)(15).

## FACTUAL ALLEGATIONS

16. Beginning on or about June 2026, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 0991 Number, from Defendant's short code number 35052.

17. On or about June 9, 2026, Plaintiff revoked his consent to be contacted, responding with the message "stop" to Defendant's short code number 35052, using clear and unambiguous opt-out language to opt out of any further text message communications with Defendant, as shown below:


1:03
35052
Tuesday, Jun 9 • 11:11 AM
Texting with 35052 (SMS/MMS)
Markets are volatile right now. Is the current gold pullback a genuine opportunity? Skip the hype and get the facts in a free 15-Minute Timing Check: https://bit.ly/4upmqMm
- Paul Drews, Augusta Precious Metals. Text STOP to end.
Tap to load preview
11:11 AM
Stop
You have opted-out and will
Text message

18. This same day, following Plaintiff's clear opt-out request, Defendant responded with a confirmation message acknowledging Plaintiff's opt-out request, as shown below:



19. Despite Plaintiff's unequivocal opt-out request and Defendant's own confirmation thereof, Defendant willfully disregarded Plaintiff's opt-out request and continued to bombard Plaintiff with more unwanted telemarketing text messages. On or about July 24, 2026, approximately forty-five days after Plaintiff's opt-out request, Defendant resumed sending unwanted text messages to Plaintiff, demonstrating a willful and knowing disregard for Plaintiff's clearly expressed wishes (as shown above).

20. On or about July 24, 2026, Plaintiff again revoked his consent to be contacted, sending a second opt-out request in an attempt to opt out of any further text message communications with Defendant, as shown below:


1:04
35052
COULD YOUR
PLAN FAIL?
AUGUSTA
Precious Metals
Augusta Precious Metals
53 likes. "5 Questions Every Retirement Saver Should Ask Right Now"
www.youtube.com
Friday, Jul 24 • 10:50 AM
Stop
You have opted-out and will receive no further text messages from APM Gold IRA Alerts. For more info, email support@augustapreciousmetals.com
10:50 AM
Text message

21. Defendant has the capability of immediately complying with Plaintiff's opt-out requests.

22. As demonstrated by Plaintiff's experience, Defendant does not honor reasonable consumer requests to opt out of text message solicitations. Indeed, Plaintiff attempted to opt out of Defendant's communications by telling Defendant "Stop" and Defendant confirmed the opt-out on the same day, but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

23. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

24. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list. In fact, Plaintiff, through counsel, made a request to Defendant for a copy of Defendant's do-not-call list policy, but received no response from Defendant.

25. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instruction.

26. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

27. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

28. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request, Defendant confirmed the opt-out on the same day, and that request was never

processed; it was ignored by Defendant and its employees and Defendant continued to send text messages.

29. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt out of future communications are honored within a reasonable time.

30. Indeed, Plaintiff's and the class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

31. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

32. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, *i.e.*, promoting Defendant's precious metals investment products and services.

33. The information contained in the text messages advertises Defendant's various products and promotions, which Defendant sends to promote its business.

34. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(1).

35. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(2).

36. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

37. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

38. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted after opting out.

39. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages after opting out.

40. Plaintiff has no existing business relationship with Defendant.

41. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on at least June 9, 2026, when Plaintiff responded to Defendant with "stop."

42. Plaintiff is the subscriber and sole user of the 0991 Number and is financially responsible for phone service to the 0991 Number.

43. Plaintiff's 0991 Number is his residential number which he uses for personal purposes.

44. Plaintiff registered his 0991 Number with the National Do-Not-Call Registry on May 29, 2013, and has been registered at all times relevant to this action.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. The text messages originated from at least short code number 35052, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

47. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

48. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

49. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

50. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations.

## CLASS ALLEGATIONS

### PROPOSED CLASS

51. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

52. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; and (4) for the purpose of promoting Defendant's products and services.**
>
> **National Internal Do Not Call Class: All persons within the United States who, within the four years prior to the**

**filing of this Complaint, (1) received at least two text messages within any 12-month period; (2) from Defendant or on Defendant's behalf; (3) for the purpose of promoting Defendant's products and services; (4) to the person's personal telephone number; (5) while Defendant did not institute procedures that met the minimum standards required by 47 C.F.R. § 64.1200(d)(1)-(6).**

**WA CEMA Class:** **Plaintiff and all persons whose cellular telephone number is assigned to a Washington resident to whom, from four years prior to the commencement of this action through class certification, Defendant initiated or assisted in the transmission of one or more commercial electronic text messages without their clear and affirmative consent in advance, in violation of RCW 19.190.060.**

53. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Classes members number in the several thousands, if not more.

54. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**NUMEROSITY**

55. Upon information and belief, Defendant has sent telemarketing text messages to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of

the Classes members is a matter capable of ministerial determination from Defendant's text messages records.

**COMMON QUESTIONS OF LAW AND FACT**

57. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a) Whether Defendant initiated telemarketing text messages to Plaintiff and the Classes members;

b) Whether Defendant violated 47 C.F.R. § 64.1200(c);

c) Whether Defendant violated 47 C.F.R. § 64.1200(d);

d) Whether Defendant initiated or assisted in the transmission of commercial electronic text messages to telephone numbers assigned to Washington residents without their clear and affirmative consent in advance, in violation of RCW 19.190.060;

e) Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

f) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

g) Whether Defendant has any written policies for maintaining an internal do not call list;

h) Whether Defendant's conduct was knowing and willful; and

i) Whether Defendant is liable for damages, and the amount of such damages.

58. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telemarketing text messages to consumers after they had requested to be opted out and at times prohibited

by law, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

59. Plaintiff's claims are typical of the claims of the Classes members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

60. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**

**Violation of the TCPA, 47 U.S.C. § 227**

**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

63. Plaintiff repeats and re-alleges paragraphs 1 through 62 of this Complaint and incorporates them by reference herein.

64. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

65. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

66. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

67. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving communications to which they object. 47 U.S.C. § 227(c).

68. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

69. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made

by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

70. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**Violation of 47 U.S.C. § 227(c)(5)**
**(Individually and on Behalf of the National Internal Do Not Call Class)**

71. Plaintiff re-alleges and incorporates paragraphs 1 through 62 as if fully set forth herein.

72. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

73. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or

> entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded- voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

74. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*."

47 C.F.R. § 64.1200(e).

75. Plaintiff and the National Internal Do Not Call Class members made requests to Defendant not to receive text messages from Defendant.

76. Defendant failed to honor Plaintiff and the National Internal Do Not Call Class members' requests.

77. Defendant continued to send telemarketing messages to Plaintiff more than ten (10) business days after Plaintiff's opt-out request.

78. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing communications made by or on behalf of Defendant, pursuant to 47 C.F.R. § 64.1200(d).

79. Because Plaintiff and the National Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

80. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the National Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

81. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the National Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

82. Plaintiff and the National Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

83. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**

**<u>Violation of Washington's Commercial Electronic Mail Act, RCW 19.190.060</u>**

**(Individually and on Behalf of the WA CEMA Class)**

84. Plaintiff re-alleges and incorporates paragraphs 1 through 62 as if fully set forth herein.

85. CEMA, codified at RCW 19.190.060(1), expressly states that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages."

86. CEMA further provides that "[a] violation of this section is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW." RCW 19.190.060(2).

87. A violation of RCW 19.190.060 is therefore actionable under the Washington Consumer Protection Act, which provides that "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090.

88. CEMA does have limited exceptions, which specify when commercial electronic text messages are allowed: (1) when the messages are transmitted at the direction of a person offering cellular telephone or pager service to the person's existing subscriber at no cost to the subscriber and (2) when the recipient of such messages has "clearly and affirmatively" consented in advance to receive such messages. *See* RCW 19.190.070(1)(a), (b).

89. However, in this case neither exception applies, as Defendant is neither offering cellular telephone or pager services to its existing subscribers (Defendant provides precious metals investment products and services), nor did Defendant obtain Plaintiff's or the WA CEMA Class members' clear and affirmative consent prior to

sending its messages (Plaintiff has no relationship with Defendant and twice instructed Defendant to "Stop").

90. Last, CEMA provides that damages to the recipient of a commercial electronic text message sent in violation of CEMA are "$100, or actual damages, whichever is greater." *See* RCW 19.190.040(1).

91. The Washington State Supreme Court has held that RCW 19.190.040 establishes the injury and causation elements of a Consumer Protection Act claim as a matter of law, and that damages for CEMA violations are automatic. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 729-731, 406 P.3d 1149 (2017).

92. Defendant, as a business conducting business in the State of Washington, including by sending telemarketing text messages to Washington residents, is subject to the rules and regulations imposed by CEMA.

93. Defendant initiated or assisted in the transmission of commercial electronic text messages to Plaintiff's and the WA CEMA Class members' cellular telephone numbers assigned to Washington residents, which promoted the sale of Defendant's goods and services.

94. Therefore, Defendant violated RCW 19.190.060.

95. As a result, Plaintiff and the WA CEMA Class members are entitled to $100 for each commercial electronic text message sent in violation of RCW 19.190.060, or actual damages, whichever is greater, pursuant to RCW 19.190.040(1).

96. Finally, as the Washington legislature has declared that a violation of RCW 19.190.060 to be "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW" (RCW 19.190.060(2)), Plaintiff and the WA CEMA Class members are further entitled to injunctive relief, costs, and reasonable attorney's fees pursuant to RCW 19.86.090.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of actual damages;

c) For statutory damages of $1,500.00 per violation of the Telephone Consumer Protection Act;

d) For damages of $100 per commercial electronic text message sent in violation of RCW 19.190.060, or actual damages, whichever is greater, pursuant to RCW 19.190.040(1) and RCW 19.86.090;

e) For treble damages pursuant to 47 U.S.C. § 227(c)(5);

f) For Plaintiff's costs and reasonable attorney's fees pursuant to RCW 19.86.090;

g) An injunction requiring Defendant to cease all text message solicitations made without express written consent, and to otherwise protect the interests of the Classes, pursuant to 47 U.S.C. § 227(c)(5) and RCW 19.86.090;

h) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: November 4, 2026

Respectfully submitted,

By: /s/ *Andrew Shamis*

**Shamis & Gentile, P.A.**
Andrew J. Shamis, Esq. (WA Bar No. 61955)
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

*Counsel for Plaintiff and Proposed Classes*